```
 1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF KENTUCKY
 2                       OWENSBORO DIVISION

 3
     UNITED STATES OF AMERICA,     )     Case No. 4:17-CR-00012-GNS
 4                                 )
              Plaintiff,           )
 5                                 )
     v.                            )
 6                                 )
     RICHARD J. ANZALONE,          )
 7                                 )     May 17, 2022
              Defendant.           )     Bowling Green, Kentucky
 8

 9                           * * * * *

10            TRANSCRIPT OF CHANGE OF PLEA HEARING
                BEFORE HONORABLE GREG N. STIVERS
11             UNITED STATES DISTRICT CHIEF JUDGE

12                           * * * * *

13   APPEARANCES:

14   For United States:      Madison T. Sewell
                             U.S. Attorney's Office
15                           241 East Main Street, Suite 305
                             Bowling Green, KY 42101
16
     For Defendant:          Patrick J. Renn
17                           Smith & Helman
                             600 West Main Street, Suite 100
18                           Louisville, KY 40202

19   [Defendant present.]

20
     Transcriber:            Dena Legg, RDR, CRR, CCR-KY
21                           Official Court Reporter
                             232 U. S. Courthouse
22                           Louisville, KY 40202

23

24      Proceedings recorded by digital recording.  Transcript
     produced by computer from audio recording that the Court
25   provided to transcriber.
```

1        (Begin proceedings in open court at 1:54 p.m.)

2            DEPUTY CLERK:  Case Number 4:17-CR-12, Defendant

3   Number 4, United States of America versus Richard J. Anzalone.

4   We're here this afternoon for a change of plea hearing.

5            MR. SEWELL:  Good afternoon, Your Honor.  Madison

6   Sewell for the United States.

7            MR. RENN:  Good afternoon, Your Honor.  Patrick Renn

8   with Richard Anzalone, and he is standing here to my left.

9            THE COURT:  All right.  And I understand Mr. Anzalone

10  is here this -- are we afternoon yet?  Sorry for being late --

11  this afternoon to enter a guilty plea; is that correct?

12           MR. RENN:  That is correct, Your Honor.

13           THE COURT:  And have you explained to your client his

14  constitutional rights?

15           MR. RENN:  I have, Your Honor.

16           THE COURT:  Do you believe he understands those

17  rights?

18           MR. RENN:  Yes, Your Honor.

19           THE COURT:  And have you talked to him about the

20  evidence in this case and discussed any possible defenses he may

21  have to these charges?

22           MR. RENN:  Yes, Your Honor, we have.

23           THE COURT:  All right.  Mr. Anzalone, before I can

24  accept your guilty plea, I'm gonna ask you some questions.  I

25  need to make sure that you understand your constitutional

```
 1   rights, that you understand the consequences of your guilty
 2   plea, that your plea is being made freely and voluntarily, and
 3   there's a factual basis for your plea.
 4       Before I ask you any questions, we're gonna put you under
 5   oath; and you need to understand that if you don't answer my
 6   questions truthfully, you could later be prosecuted for perjury.
 7   Okay?
 8               THE DEFENDANT:  Yes, Your Honor.
 9               DEPUTY CLERK:  If you'll please raise your right hand.
10       (Defendant sworn.)
11               THE COURT:  What's your full name, please?
12               THE DEFENDANT:  Richard Anzalone.
13               THE COURT:  How old are you, sir?
14               THE DEFENDANT:  Sixty-one.
15               THE COURT:  Where were you born?
16               THE DEFENDANT:  New York, New York.
17               THE COURT:  Where do you live now?
18               THE DEFENDANT:  I live now -- I have a home in LA, but
19   I'm staying at my in-law's in Nevada.
20               THE COURT:  How far did you go in school?
21               THE DEFENDANT:  I finished 12th grade, and I did trade
22   school.  I took two different trade schools.
23               THE COURT:  Have you ever been diagnosed or treated
24   for any mental illness?
25               THE DEFENDANT:  No, Your Honor.
```

1        THE COURT:  Are you currently taking any medication

2   that would affect your ability to understand the questions that

3   you're being asked this afternoon?

4        THE DEFENDANT:  No, Your Honor.

5        THE COURT:  Are you currently under the influence of

6   any alcohol or drugs?

7        THE DEFENDANT:  No, Your Honor.

8        THE COURT:  Have you ever received any treatment for

9   alcohol or drug addiction?

10        THE DEFENDANT:  When I was younger, I got a drunk

11   driving, but that was about 17 or 18 years old.

12        THE COURT:  All right.  Do you understand why you're

13   here today?

14        THE DEFENDANT:  Yes, sir, yes, Your Honor.

15        THE COURT:  All right.  Mr. Renn, Mr. Sewell, do

16   either of you have any doubt that Mr. Anzalone is competent to

17   plead at this time?

18        MR. SEWELL:  No doubts, Your Honor.

19        MR. RENN:  No, Your Honor.

20        THE COURT:  All right.  Mr. Anzalone, have you had

21   enough time to talk about your case with Mr. Renn?

22        THE DEFENDANT:  Yes, I have, Your Honor.

23        THE COURT:  And in particular, have you had enough

24   time to talk to your attorney about your guilty plea?

25        THE DEFENDANT:  Yes, I have, Your Honor.

1          THE COURT:  All right.  Are you satisfied with the

2     advice that your attorney's given you so far?

3          THE DEFENDANT:  He's been an excellent attorney, and

4     his advice is good, yes, sir.

5          THE COURT:  You're certainly well represented, that's

6     for sure.

7        I'm gonna go over your constitutional rights.  First, you

8     understand that you do not have to plead guilty to these

9     charges?

10          THE DEFENDANT:  Yes, I understand that, Your Honor.

11          THE COURT:  Do you understand that you have the right

12     to a trial by jury and that if you plead guilty, that there will

13     not be a trial for you in this case?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Do you understand that at trial you'd be

16     represented by an attorney, and that if you could not afford

17     one, an attorney would be appointed for you?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Do you also understand that you're

20     presumed innocent and that at trial the United States would have

21     the burden of proving you guilty beyond a reasonable doubt on

22     all of these charges before you could be convicted?

23          THE DEFENDANT:  Yes, I do understand that, Your Honor.

24          THE COURT:  Now, in order to prove you guilty beyond a

25     reasonable doubt, the United States would bring witnesses into

1    the courtroom to testify against you.  Do you understand that

2    you, with the assistance of your counsel, would have the right

3    to cross-examine each of those witnesses?

4           THE DEFENDANT:  Yes, Your Honor, I understand.

5           THE COURT:  Do you also understand that if there was a

6    trial, you would have the right to subpoena witnesses to appear

7    at the trial to help you present your side of the case to the

8    jury?

9           THE DEFENDANT:  Yes, I do understand that, yes, Your

10   Honor.

11          THE COURT:  Do you also understand that if there was a

12   trial you could testify, but you would not have to testify and

13   that no one could force you to testify?

14          THE DEFENDANT:  Yes, I understand that, Your Honor.

15          THE COURT:  Do you also understand, if you chose not

16   to testify, that I would tell the jury that they could not hold

17   that against you in any way?

18          THE DEFENDANT:  Yes, Your Honor, I understand.

19          THE COURT:  Finally, do you understand that by

20   pleading guilty that you're waiving these rights?

21          THE DEFENDANT:  Yes, I understand, Your Honor.

22          THE COURT:  Have you received a copy of the second

23   superseding indictment?

24          THE DEFENDANT:  Yes, I have, Your Honor.

25          THE COURT:  Have you read it?

1          THE DEFENDANT:  I have read it several times.

2          THE COURT:  All right.  And the counts that you're

3   pleading guilty to --

4          MR. RENN:  It would be Count 13, Your Honor.

5          THE COURT:  Count 13.  It's just one count that's

6   being -- that's being pled to?

7          MR. RENN:  Yes, Your Honor.

8          THE COURT:  All right.

9          MR. SEWELL:  He's only charged in two counts.  He's

10  charged in Count 1 and 13.

11         THE COURT:  All right.  I'm gonna go over, as I do

12  typically, verbatim this -- the count to which you're pleading

13  guilty, Count 13.

14      Count 13 alleges that on or about the following dates that

15  are listed here in the paragraph, that you and Mr. Maike,

16  Mr. Barnes, Mr. Hosseinipour, Mr. Dvorin, and Mr. Syn knowingly

17  and willfully combined, conspired, and agreed with one another

18  and others known and unknown, directly and indirectly, in

19  connection with the sale of securities by use of the means and

20  instrumentalities of interstate commerce and the mails, did use

21  and employ manipulative and deceptive devices and contrivances

22  in violation of Title 15, U.S. Code, Sections 87j(b), 80 -- I'm

23  sorry -- 78j(b), 78ff, and Title 17, CFR, Section 240, 10b-5 by

24  employing devices, schemes, and artifices to defraud; making

25  untrue statements of material facts, and omitting to state

1    material facts necessary in order to make the statements made,

2    in light of the circumstances under which they were made, not

3    misleading; and engaging in acts, practices, and courses of

4    business which operated and would operate as a fraud and deceit

5    upon the persons charged in Count 1 during the sale of

6    securities with respect to this list of victims that are set

7    forth in pages 16 and 17:  the investor K.H. on June 21st, 2013,

8    of $5,000; K.H. on June 24th, 2013, $5,000; J.A. on June 17th,

9    2013, $1,020; and the others listed here.  I'm not gonna go

10   through every one of these, but all in violation of Title 15,

11   U.S. Code, Section 78j(b) and Title 18, U.S. Code, Section 731.

12       Did I adequately and accurately then describe the charge

13   against the defendant, Mr. Renn?

14             MR. RENN:  Yes, Your Honor, you have.

15             THE COURT:  Mr. Sewell?

16             MR. SEWELL:  You did, Your Honor.

17             THE COURT:  All right.  Mr. Sewell, what is the

18   maximum possible penalty provided by statute for the charge to

19   which this defendant is pleading guilty, and are there any

20   mandatory minimum penalties?

21             MR. SEWELL:  Your Honor, there are no mandatory

22   minimum penalties, and for Count 13 to which this defendant is

23   pleading, the maximum possible penalty would be not more than

24   five years in prison, up to a $250,000 fine, or both, and up to

25   three years of supervised release.

1          THE COURT:  All right.  Mr. Renn, do you agree with

2     that assessment?

3          MR. RENN:  I do agree, Your Honor.

4          THE COURT:  All right.  Mr. Anzalone, do you

5     understand then, under the offense to which you're pleading

6     guilty, the Court could sentence you up to five years in prison,

7     a fine of up to $250,000, and three years of supervised release?

8          THE DEFENDANT:  Yes, I understand, Your Honor.

9          THE COURT:  All right.  Do you understand that term of

10    supervision doesn't reduce any prison term but would be served

11    following imprisonment?  If you violate a term of this

12    supervision, you could be sent back to prison, no matter how

13    much time you served prior to violation of the condition, and

14    the Court could impose an additional term of supervision

15    following imprisonment for violation of the first term of

16    supervision.  Do you understand that?

17         THE DEFENDANT:  Yes, I understand, Your Honor.

18         THE COURT:  All right.  Have you and your attorney

19    talked about how the sentencing guidelines might apply to your

20    case?

21         THE DEFENDANT:  We have; right?

22       Yes, we have.

23         THE COURT:  Yeah, you've got -- you can't answer my

24    question with a question, but do you understand that the U.S.

25    Sentencing Commission's guidelines are gonna be utilized with

1    respect to sentencing and that the Court can't determine what

2    the guideline range is for you until a presentence report has

3    been completed and you and the Government both have an

4    opportunity to object to the information that's provided to the

5    Court by the probation officer?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  All right.  Do you understand that the

8    sentence that's actually imposed upon you may be different from

9    any estimate your attorney may have given you?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Do you understand that under some

12   circumstances I have the authority to impose a sentence that's

13   more severe or less severe than what's called for by the

14   guidelines?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  All right.  And then as part of the plea

17   agreement, do you understand that you are -- that you're waiving

18   some of your rights to appeal any sentence that's imposed in

19   this case?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And do you also understand there are two

22   exceptions to that waiver of your right of appeal so that you

23   will retain the right to appeal based upon claims of either

24   ineffective assistance of counsel or prosecutorial misconduct?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Do you understand that parole's been

2    abolished and that if you're sentenced to prison, you will not

3    be released on parole?

4          MR. RENN:  Your Honor, he only hears out of one ear

5    and not well.

6          THE COURT:  I'm doing my best, yes, sir.

7      There's no parole.  If you're sentenced to prison, there is

8    no parole.

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  All right.  Now, is restitution covered in

11   the plea agreement?

12         MR. SEWELL:  Restitution is covered in the plea

13   agreement.  So restitution is -- I can find the paragraph where

14   that is.  Paragraph 9 goes through all of restitution.  There's

15   no agreement as to a specific number, but it goes through the

16   general provisions, that restitution is at issue and that the

17   parties agree that it will be due and payable on the date of

18   sentencing.  A payment schedule will be imposed by the Court,

19   the standard language that we have in cases involving

20   restitution.

21         THE COURT:  Okay.  So that's being left then to be

22   determined at sentencing then, the amount?

23         MR. SEWELL:  That's correct.

24         MR. RENN:  Yes, and there is a stipulation, Your

25   Honor, in numerical paragraph 11 as to the amount of the loss,

1    and that is stipulated by Mr. Anzalone to be $941,913.

2              THE COURT:  All right.

3              MR. SEWELL:  That's the amount of the gain --

4              MR. RENN:  Gain, correct.

5              MR. SEWELL:  -- to this defendant.

6              THE COURT:  All right.  And is forfeiture an issue in

7    this case?

8              MR. SEWELL:  There is a forfeiture count in the

9    indictment.  This defendant is listed in the forfeiture count,

10   but the United States has not identified any specific assets

11   that are subject to forfeiture that are his.

12             THE COURT:  Okay.  So at sentencing, then that will

13   not be an issue; correct?

14             MR. SEWELL:  Correct.

15             THE COURT:  All right.  Mr. Anzalone, do you

16   understand then that -- Anzaolone, I'm sorry -- that there will

17   be a $100 special assessment for the single count -- felony

18   count as required by 18 U.S.C. Section 3013?  You have to pay

19   $100.

20             THE DEFENDANT:  Yes, I understand.

21             THE COURT:  All right.  Are you currently on probation

22   or parole for any other offense?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  All right.  Do you understand that you're

25   pleading guilty to a felony and that this felony conviction

1    would deprive you of certain civil rights, such as the right to

2    vote, the right to hold public office, the right to serve on a

3    jury, and the right to possess any kind of firearm?

4             THE DEFENDANT:  Yes, I understand that, Your Honor.

5             THE COURT:  All right.  Mr. Sewell, the parties have

6    tendered the plea agreement and the plea supplement in

7    conformance with our local requirements.  Would you please

8    outline the substance of the agreement between the United States

9    and Mr. Anzalone.

10            MR. SEWELL:  Yes, Your Honor.  This is a plea

11   agreement pursuant to Rule 11(c)(1)(A) and (C) of the Federal

12   Rules of Criminal Procedure, which means that the plea agreement

13   discusses one charge being dismissed and making certain

14   recommendations to the Court that if the plea agreement is

15   accepted would be binding on the Court.

16        The plea agreement goes through what the charges are, what

17   the maximum possible penalties are.  It goes through an agreed

18   factual basis that the parties have agreed meet all of the

19   elements of the offenses at issue.  It also goes through all the

20   defendant's rights and that by pleading guilty he gives up those

21   rights, similar to what the Court just went through with this

22   defendant.

23        It goes through restitution, as we've discussed already.

24   Then in paragraph 11, it has certain promises that the United

25   States makes in return for the defendant's plea of guilty, and

those are as follows:  At the time of the sentencing, the United

States will move for dismissal of Defendant Anzaolone from

Count 1 of the superseding indictment, recommend a sentence at

the lowest end of the applicable guideline range but not less

than any mandatory minimum term of imprisonment required by law,

recommend a reduction of three levels below the otherwise

applicable guideline for acceptance of responsibility, and

stipulate that the amount of gain realized by the defendant

resulting from the offense is approximately $941,913.

It goes through that the defendant waives his right to

appeal his conviction and sentence unless based on claims of

ineffective assistance of counsel or prosecutorial misconduct.

Then it has -- in paragraph 19, it has the -- the (C) plea

language, which is that if the Court refuses to accept this

agreement and impose a sentence in accordance with its terms or

dismiss Count 1 according to the United States' motion pursuant

to Federal Rule of Criminal Procedure 11(c)(1)(A) and (C), this

agreement will become null and void and neither party shall be

bound thereto, and the defendant will be allowed to withdraw the

plea of guilty.

It also notes that this document, along with the

supplemental -- the plea supplement, state the complete and only

plea agreement between the United States in the Western District

of Kentucky.  In other words, that there are no side deals, that

everything about this agreement has been reduced to writing in

1    both the plea agreement and the plea supplement and that the

2    plea supplement is a document that will be filed separately

3    under seal, and we'll go on a sealed record for that, or we can

4    discuss it now or later.

5           THE COURT:  Let's go ahead and discuss it now.  We'll

6    go on the sealed record then.

7       (Excerpt filed under seal.)

8           THE COURT:  So I'll ask that other -- that last

9    question again, Mr. Anzalone.  Do you understand the terms as

10   outlined by Mr. Sewell to be the terms of your -- the entire

11   terms of your agreement with the Government in this case?

12          MR. RENN:  Do we have any agreement other than what's

13   been presented to the Court in writing?  We don't have any side

14   deals or oral agreements; correct?

15          THE DEFENDANT:  No.

16          MR. RENN:  This is the only agreement we have?

17          THE DEFENDANT:  This is the only agreement we have,

18   sir, Your Honor.  Excuse me.

19          THE COURT:  The plea agreement and plea supplement,

20   this is your signature on both documents?

21          THE DEFENDANT:  Yes, it is, Your Honor, yes.

22          THE COURT:  Has anyone threatened you, or anyone close

23   to you, in any way in order to get you to plead guilty to this

24   charge?

25          THE DEFENDANT:  Not yet, no, no.

1           THE COURT:  All right.  Well, that's not funny.

2           THE DEFENDANT:  That's not.  I agree.

3           THE COURT:  I'm sorry, but that's very important.  Has

4    anybody made any threats to you to get you to plead guilty to

5    this charge?

6           THE DEFENDANT:  Oh, no, nobody made threats to -- to

7    force me to do this.  No, I did this on my own will of justice.

8    I thought you meant the other way.  Sorry about that, Your

9    Honor.

10          THE COURT:  All right.  Now, you understand then, if

11   the United States does not move under the terms of this

12   agreement for probation because of noncompliance with the

13   conditions, that you will not be able to withdraw your guilty

14   plea?

15          THE DEFENDANT:  That I understand, Your Honor.  I

16   fully expect to comply.

17          THE COURT:  All right.  Mr. Renn?

18       You know what, I'm sorry.  I don't know another way to get

19   around this so -- and do you understand, under those

20   circumstances, that I may impose a sentence that's more severe

21   than probation that's called for by the plea agreement?

22          THE DEFENDANT:  I don't understand that.

23          THE COURT:  All right.  Let's go back on the sealed

24   record, please.

25       (Excerpt filed under seal.)

1            THE COURT:  Mr. Sewell, would you please summarize the

2       evidence that the Government would be prepared to present at

3       trial if this defendant did not plead guilty.

4            MR. SEWELL:  Yes, Your Honor, and I'll be reading from

5       the agreed factual basis, which is in paragraph 3 of the plea

6       agreement.

7            Beginning on and about -- in or about January -- July 2013

8       and continuing to in or about December 2014, the defendant,

9       together with Richard Maike, Doyce Barnes, Faraday Hosseinipour,

10      Dennis Dvorin, and Jason Syn, knowingly agreed to promote and

11      sell Emperor positions and other offerings through I2G, a

12      multi-level marketing business conceived and headed by its CEO,

13      Richard Maike.

14           The defendant sold memberships in the I2G business venture,

15      including Emperor positions.  During this time, I2G was offering

16      primarily three products for sale:  a software application

17      called the I2G Touch; revenue from an online casino,

18      i2gcasino.com; and Sonstagram.

19           Along with others, the defendant promoted and sold Emperor

20      positions as a security, that is, instruments to participate in

21      a profit sharing agreement in which Emperors would share in the

22      profits of the I2G casino.  Through purchases of these

23      securities that were not registered on a national securities

24      exchange, investors were promised passive income whereby the

25      investor did not have to recruit any additional members into the

1    I2G business venture in order to profit but would share in

2    50 percent of the online casino's profits for life.

3        As part of the promotion and sale of I2G memberships,

4    defendant made material misrepresentations and concealed

5    material facts from investors, including (1) the fact that I2G's

6    casino profits were negligible, at best, and that investors in

7    the Emperor position had zero chance of recouping their

8    investment in any reasonable amount of time, if ever; (2)

9    despite representations to the contrary, the defendant was aware

10   of a high probability that the I2G Touch had no significant

11   differences in the versions of the program available online and

12   that the defendant deliberately closed his eyes to what was

13   obvious, that no purchaser invested in I2G to gain the use of

14   the I2G Touch, an application that was available for free

15   download.

16       Defendant knew but did not disclose that the only way to

17   profit from the purchase of an Emperor position was to gain

18   commissions by selling additional Emperor positions.  I2G's

19   business was a pyramid scheme, that is, an organization in which

20   Anzaolone and other participants obtained their monetary rewards

21   primarily through enrolling new people into the program rather

22   than selling goods and services.

23       The defendant acted with reckless disregard for the truth of

24   statements made to I2G investors.  In reliance on those

25   representations, individuals purchased Earning Ranks, including

1    the Emperor rank.

2        The defendant caused others to use the mail in furtherance

3    of the scheme, specifically, by mailing cashier's checks in the

4    amount of $5,000 or more for the purchase of Emperor positions

5    to Defendant Maike's home address in Owensboro, Kentucky.

6        Through the course of this conspiracy, Defendant Anzaolone

7    received, through a company or companies formed with

8    Co-Defendant Faraday Hosseinipour, approximately $941,913 in

9    commissions and bonuses for the sale of various I2G earning

10   ranks, including Emperor positions.

11           THE COURT:  All right.  Mr. Renn, do you agree that

12   Mr. Sewell has accurately summarized the substance of the facts

13   that would be presented at trial?

14           MR. RENN:  Yes, Your Honor.

15           THE COURT:  All right.  Mr. Anzalone, under the Fifth

16   Amendment of the United States Constitution, you've got the

17   right to remain silent and to say nothing that incriminates

18   yourself, but in order to take your guilty plea, I've got to ask

19   you if you did in fact engage in the illegal conduct that the

20   prosecutor just described and whether you're guilty of the crime

21   charged.  In order to answer my questions, you'll be waiving

22   your right under the Fifth Amendment to remain silent.  Do you

23   understand and agree to this waiver of your right?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Is it still your desire to enter a plea of

1  guilty to this charge?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Have you understood everything that's been

4  said here this afternoon?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  Do you have any questions

7  before I ask you how you plead?

8      (Excerpt filed under seal.)

9          THE COURT:  Do you have any other questions?

10         THE DEFENDANT:  No other questions, Your Honor.

11         THE COURT:  All right.  Are you guilty of the crimes

12  charged?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  And did you do the things that the

15  prosecutor just said you did?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  As to Count 13 of the indictment -- of the

18  second superseding indictment then, how do you plead, sir?

19  Guilty or not guilty?  It's Count 13; right?

20         THE DEFENDANT:  Yes, guilty, yes, sir --

21         THE COURT:  All right.

22         THE DEFENDANT:  -- Your Honor.

23         THE COURT:  Very well.  It's the finding of the Court

24  that you're fully competent and capable of entering into an

25  informed plea and that your guilty plea is a knowing and

1    voluntary plea containing each of the essential elements of the

2    offense.

3         We will file the plea agreement in the record, and we will

4    seal the plea supplement, in accordance with our local rules.

5              THE DEFENDANT:  Thank you, Your Honor.

6              THE COURT:  All right.  Thank you.

7         The next step, Mr. Anzalone, in this process will be

8    preparation of a presentence investigation report I've referred

9    to a couple of times.  You'll be asked to give information for

10   the report, and your attorney may be present with you during

11   that interview, if you wish.

12        You and Mr. Renn will get a copy of the report prior to the

13   sentencing hearing, and you and your attorney will both have an

14   opportunity to speak on your behalf at that sentencing.  The

15   probation office will coordinate a date and time for your

16   interview.

17        The sentencing will be held on August 9, 2022, at 10:00 a.m.

18   at the courthouse in Owensboro.

19        Does the United States wish to make a motion for detention

20   pending the sentencing hearing?

21             MR. SEWELL:  No, Your Honor.

22             THE COURT:  All right.  We will remand then the

23   July 12 trial date for this defendant only.

24        And, Mr. Renn, anything further that you need from the Court

25   this afternoon?

1          MR. RENN:  No, Your Honor.  Thank you.

2          THE COURT:  All right.  Anything further from the

3    United States?

4          MR. SEWELL:  Nothing further from the United States.

5          THE COURT:  All right.  We're adjourned.

6       (Proceedings concluded at 2:25 p.m.)

7                    C E R T I F I C A T E

8       I am an official court reporter for the U.S. District Court

9    for the Western District of Kentucky and certify that the

10   foregoing is a true and correct transcript, to the best of my

11   ability, of the above pages, of the digital audio recording

12   provided to me by the Court of the proceedings taken on the date

13   and time previously stated in the above matter.

14
     _____s/ Dena Legg_____          June 28, 2022_
15   Official Court Reporter          Date

16

17

18

19

20

21

22

23

24

25